

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

FILED
JUN 18 2018
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of<br><br>INFORMATION ASSOCIATED WITH FACEBOOK ACCOUNT: WWW.FACEBOOK.COM/Bryce.studebaker.37 THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | )<br>)<br>) Case No.<br>)<br>) 2:18-SW-521 — KJN<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251 | Attempted Production/ or Production of Child Pornography |
| 18 U.S.C. § 2252(a)(2) | Receipt of Child Pornography |
| 18 U.S.C. § 2252(a)(4)(b) | Possession of Child Pornography |
| 18 U.S.C. § 2422(b) | Enticement of a Minor |

The application is based on these facts:
**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Alexander C. Johnson
Special Agent, Air Force Office of Special Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 18, 2018

_____
*Judge's signature*

City and state: Sacramento, California

Kendall J. Newman, U.S. Magistrate Judge
*Printed name and title*

McGREGOR W. SCOTT
United States Attorney
JILL M. THOMAS
Assistant United States Attorney
Eastern District of California
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| In the Matter of the Search of: | CASE NO. |
|---|---|
| INFORMATION ASSOCIATED WITH FACEBOOK ACCOUNT: WWW.FACEBOOK.COM/Bryce.studebaker.37 THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT |

I, Alexander C. Johnson, being first duly sworn, hereby depose and state as follows:

### I.   INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises controlled by FACEBOOK INC., a social network company headquartered at 1601 Menlo Road, Menlo Park, California, 94025. The information to be searched is described in the following paragraphs and in Attachment A, hereby incorporated by reference. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require FACEBOOK INC. to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B (hereby incorporated by reference), government-authorized persons will review that information to locate the items described in Section II of Attachment B.

AFFIDAVIT                                            1

1.     I have been a Special Agent with AFOSI since March 30, 2017. I am currently assigned to AFOSI Detachment 218, located on Beale Air Force Base, California. As a Special Agent with AFOSI, I primarily investigate felony level crimes against the United States Air Force; including violations of the Uniform Code of Military Justice and the United States Code. I have received training in the area of identifying and investigating child pornography and child exploitation crimes, and as part of my duties have observed and reviewed numerous examples of child pornography in all forms of media, including computer media. In the course of my employment, I have participated in many search warrants in connection with child exploitation matters and other violations involving businesses and residences. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2251, 2251A, 2252, 2252A, and 2422(b), and I am authorized by 28 C.F.R. Sections 60.1, 60.2(g), 60.2(h), 60.3(a)2 to request a search warrant.

2.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 2251, Attempted Production/Production of Child Pornography, 2252(a)(2), Receipt of Child Pornography, 2252(a)(4)(b), Possession of Child Pornography, and 2422(b), Enticement of a Minor, have been committed by BRYCE STUDEBAKER ("SUBJECT"). There is also probable cause to search the information described in Attachment A for evidence of child pornography or attempts to elicit child pornography, communications and chat logs with any minors or other evidence of these crimes further described in Attachment B.

## II.     JURISDICTION

4.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

///

AFFIDAVIT                                            2

### III. PROBABLE CAUSE

5. On April 7, 2018, I interviewed SUBJECT who relayed the following information in summary:

a) SUBJECT provided he first made contact with minor female 1 in Erwin, TN, (VICTIM 1) in approximately December 2015 through the online application "LesReal."[1] Although there were multiple people within the chatroom, SUBJECT immediately connected with VICTIM 1. SUBJECT and VICTIM 1 continued to communicate on "LesReal" until approximately April of 2016.[2]

b) In April 2016, SUBJECT and VICTIM 1 began communicating via Facebook Messenger, Skype, and the application "Discord" because they wanted to be able to chat one-on-one.[3] SUBJECT thought VICTIM 1's birthday was April 2002. During the conversations on Facebook Messenger, SUBJECT and VICTIM 1 discussed her attending the 8th Grade as well as her birthday. VICTIM 1 would often complain about middle school and SUBJECT reassured her that school would be better once she attended high school. SUBJECT and VICTIM 1 did not meet in person or make plans to meet in person. SUBJECT knew meeting VICTIM 1 would be illegal so they made plans to meet once she turned 18.

c) In March 2017, SUBJECT sent VICTIM 1 the first sexually graphic photograph of himself and requested sexually explicit photos of VICTIM 1 over Facebook Messenger. SUBJECT started by sending a picture without his shirt followed by a photograph of his penis. VICTIM 1 then began sending SUBJECT photographs of herself naked (showing her breasts and vaginal area). SUBJECT and VICTIM 1 continued to send, via Skype, Facebook Messenger, and Discord, each other pornographic photographs and videos from approximately March 2017 until April 5, 2018.

---

[1] VICTIM 1 was born in 2003 and is currently 15 years old.

[2] "Les-Real" is Less-Real. Less-Real is a website dedicated to adult animated cartoons which includes forums where people can discuss their favorite adult cartoons.

[3] Discord is a software application designed for gaming communities that specializes in text and audio communication between users in a chat channel. Discord runs on applications on phones, tablets, computers, and in web browsers.

d) SUBJECT estimated, in the beginning, he and VICTIM 1 shared sexually explicit photographs approximately once every two weeks. The frequency of sharing gradually increased throughout the year until by April 2018 they were sharing photographs and videos approximately every two days. Through Facebook Messenger, SUBJECT requested VICTIM 1 touch her vagina and masturbate in videos for him. SUBJECT also requested VICTIM 1 vaginally penetrate herself with inanimate objects, mainly the handle of a brush, then put the brush into her mouth. SUBJECT estimated VICTIM 1 performed this act approximately 30 times at his request. Some of these acts were either recorded or conducted via live streaming on Skype.[4]

e) On two occasions, while on Facebook Messenger, SUBJECT requested VICTIM 1 penetrate herself anally with a brush handle. VICTIM 1 told SUBJECT it was painful but she would do it for him. SUBJECT sent VICTIM 1 videos of him masturbating and photographs of him ejaculating. SUBJECT sent VICTIM 1 adult pornography depicting rape and cartoon pornography depicting adult males having sexual intercourse with underage females.

f) SUBJECT admitted that he only spoke about his relationship to VICTIM 1 and VICTIM 2's friends, which were also minors. [VICTIM 2, also born in 2003 and currently 15 years old, was a school friend of VICTIM 1. SUBJECT met VICTIM 2 through VICTIM 1.] SUBJECT spoke to these minors via the Facebook Messenger application.

6. On April 7, 2018, I searched, pursuant to a military search authorization, SUBJECT's residence where I discovered a laptop with the Facebook Messenger application logged in. While scrolling through the messages between VICTIM 1 and SUBJECT from February 2018 through April 2018, I saw approximately 20 photographs and videos of VICTIM 1 naked and engaged in sexual acts. Additionally, I saw approximately three photographs of what I presumed to be SUBJECT's penis and chats where SUBJECT requested VICTIM 1 perform sexual acts so he could masturbate.

7. On April 17, 2018, AFOSI agents SA GREG PFEIFFER and SA STEVE JOHNSON, AFOSI Det 106, Arnold AFB, TN, interviewed VICTIM 1's mother, Civ LORA FLEMING (L.F.), 761

---

[4] Live Stream – Streaming media is multimedia that is constantly received by and presented to an end-user while being delivered by a provider or another user in real time. Skype is a telecommunications application software product that specializes in providing video chat and voice calls between computers, tablets, and mobile devices via the Internet and to telephones.

AFFIDAVIT 4

Love St, Erwin, TN, who relayed the following information in summary:

    a) When VICTIM 1 was in 8th grade, L.F. caught her speaking with SUBJECT on her school iPad. In approximately fall of 2017, L.F. walked into VICTIM 1's bedroom and noticed she was asleep with her laptop open. L.F. reached over her to close the laptop, and noticed SUBJECT was connected via Skype.

    b) On April 4, 2018, L.F. was in her kitchen when VICTIM 1's phone received a notification. When L.F. looked at the screen, she noticed the profile picture of SUBJECT in Facebook Messenger. L.F. recognized SUBJECT as the same person whom she witnessed on the laptop from six months prior. L.F. confronted VICTIM 1, who then told L.F. "we [presumed to mean VICTIM 1 and VICTIM 2 and possibly other minor females] have been talking to the man" (SUBJECT) for approximately two years. She assured L.F. that SUBJECT would not hurt any of VICTIM 1's friends or family. VICTIM 1 told L.F. that SUBJECT wanted to speak with her [L.F.] in order to make her [L.F.] more comfortable with their relationship. The following morning, L.F. contacted local police to report the matter.

8. On April 18, 2018, SA PFEIFFER and SA S. JOHNSON conducted an interview with VICTIM 2 who relayed the following information in summary:

    a) [In 2016], when VICTIM 2 was 13 years old, she and VICTIM 1 spoke with SUBJECT on a website/server called "Discord." VICTIM 1 "dated" SUBJECT for approximately half of the first summer [of 2016], then SUBJECT broke up with her, and started dating VICTIM 2 [later in 2016].

    b) Once VICTIM 2 started dating him, SUBJECT would ask her to send him "nudes" daily, and asked her to do sexual things for him when they chatted. VICTIM 2 did not state which communication application VICTIM 2 and SUBJECT used to send photographs.

    c) VICTIM 2 stated SUBJECT [in 2016] wanted her to send nude photos of herself "a lot," and estimated that they exchanged photos daily. This resulted in hundreds of photos being exchanged. VICTIM 2 mostly sent him photos of her topless with her breasts exposed, but she also sent him photos of her lower vaginal area. The two also exchanged videos of each other masturbating. VICTIM 2 did not want to upset SUBJECT by not sending him what he requested,

AFFIDAVIT      5

1  which was why she complied, but she felt pressured and awkward at times.

2  9.      On May 21, 2018, SA JOHNSON and AFOSI agent SA ANDRES MARTINEZ-MUNOZ, AFOSI Det 340, Macdill AFB (MAFB), FL, interviewed VICTIM 1 who relayed the following information in summary:

   a)      VICTIM 1 could not remember when she met SUBJECT but remembered that they met in an online chatroom called "Lessreal" while VICTIM 1 was looking for quotes. [Based on other investigative material gathered, the two likely "met" in late 2015.] When they met and through converstaions, VICTIM 1 was aware SUBJECT was 19 years old and SUBJECT knew she was 12 years old. Soon after SUBEJCT and VICTIM 1 began talking they moved their chats to Discord, Skype, and Facebook Messenger, where they began dating.

   b)      SUBJECT would occasionally ask VICTIM 1 to send naked pictures of herself. VICTIM 1 complied because she thought it made him happy. As VICTIM 1 and SUBJECT dated over the next two years, the frequency of SUBJECT's requests went from once every few weeks to approximately every day. In the beginning, SUBJECT requested VICTIM 1 penetrate herself digitally in her vagina. After multiple occasions of this, VICTIM 1 began using objects to avoid being "boring." VICTIM 1 used many objects while making videos and photos for SUBJECT but primarily used a brush handle. VICTIM 1 would pretend to tie herself up, used mouth gags, wore collars, hit herself, and wore leashes to pose for SUBJECT while chatting on Skype and Facebook Messenger. VICTIM 1 never hurt herself because it was just role playing. VICTIM 1 learned about tying and collars through pornography SUBJECT sent her over Facebook Messenger. SUBJECT wanted VICTIM 1 to penetrate herself anally and send him videos and/or photographs of the same. VICTIM 1 stated she reluctantly complied with SUBJECT's request to penetrate herself anally on four occasions and she sent the images/videos over Facebook Messenger. VICTIM 1 thought it was occasionally painful [to anally penetrate herself], but she did it because SUBJECT enjoyed it and masturbated to it. SUBJECT would tell her that she could stop [penetrating herself], but she continued to do it so he could ejaculate.

   c)      Based on conversations they had with each other, VICTIM 1 knew that VICTIM 2 also sent and received pornographic images from SUBJECT. VICTIM 2 dated SUBJECT at the

AFFIDAVIT                                   6

same time as VICTIM 1 until VICTIM 2 called SUBJECT a "pedophile" for continuously asking for nude photos of her. SUBJECT sent VICTIM 1 numerous photos of him masturbating and of his erect penis over Facebook Messenger.

10. On April 7, 2018 and June 7, 2018, a preservation request was submitted using Facebook's Law Enforcement Portal regarding the SUBJECT's account. In general, a message that is sent to a FACEBOOK INC. subscriber is stored in the subscriber's account on FACEBOOK INC. servers until the subscriber deletes the message. If the subscriber does not delete the message(s), they can remain on FACEBOOK INC. servers indefinitely. Even if the subscriber deletes the message(s), it may continue to be available on FACEBOOK INC. servers for a certain period of time.

## IV. BACKGROUND CONCERNING FACEBOOK

11. In my training and experience, I have learned that FACEBOOK INC. provides a variety of on-line services, including social network accounts, direct private messaging, and electronic mail ("email") access, to the public. FACEBOOK INC. allows subscribers to obtain social media accounts via its website, Facebook.com. When a user subscribes and obtains an account, the ability to privately message another user is built in to the account. In order for a user to send a direct message to another user, the two must be "friends," meaning that the other user's Facebook account has been linked to the user's own account via an accepted friend request. In addition, when a user obtains a Facebook account, an email address is assigned to that user using the domain @fb.com. During the registration process, FACEBOOK INC. asks subscribers to provide basic personal information. Therefore, the computers of FACEBOOK INC. are likely to contain stored electronic communications (including retrieved and/or unretrieved messages or email) and information concerning subscribers and their use of FACEBOOK INC. services, such as account access information, friend lists, photos and videos, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

12. In my training and experience, Facebook generally asks subscribers to provide certain personal identifying information when registering for an account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, email addresses, and other personal information. In my training and experience, such information may constitute evidence of

the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provides clues to their identity, location or illicit activities.

13. In my training and experience, social network and email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of services utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, social network and email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

14. As explained herein, information stored in connection with a social media or email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with a Facebook account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, "friend" lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner.

Additionally, information stored in the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the account owner's state of mind as it relates to the offense under investigation. For example, information in the account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## V. CONCLUSION

15. Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on FACEBOOK INC. who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Alexander C. Johnson
Special Agent
Air Force Office of Special Investigations

Subscribed and sworn to before me on: June 11, 2018

The Honorable Kendall J. Newman
UNITED STATES MAGISTRATE JUDGE

6/18/18
Approved as to form by AUSA JILL M. THOMAS

AFFIDAVIT 9

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with WWW.FACEBOOK.COM/Bryce.studebaker.37, that is stored at premises controlled by FACEBOOK INC., a company that accepts legal process via a law enforcement portal I have used and am familiar with.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be disclosed by FACEBOOK INC. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any emails, records, files, posts, messages, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on April 07, 2018 (request # 1626256), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.     The entire contents of the Facebook account and any information or data associated with the account, including stored or preserved copies of posts, photos, videos, messages and emails sent to and from the account, draft messages and emails, the source and destination accounts associated with each message and email, the date and time at which each message or email was sent, and all contents of these messages and emails;

b.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, email and alternative email addresses provided during registration, methods of connecting, log files, and any means and source of payment (including any credit or bank account number) if provided;

c.     The types of services utilized;

AFFIDAVIT

d. All records or other information stored at any time by an individual using the account, including address books, contact and "friend" lists, calendar data, pictures, and files;

e. All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

## II. Information to be seized by the government

All information described above in Section I that constitutes evidence, instrumentalities, contraband, or fruits of violations of 18 U.S.C. §§ 2251, Attempted Production/Production of Child Pornography, 2252(a)(2), Receipt of Child Pornography, 2252(a)(4)(b), Possession of Child Pornography, and 2422(b), Enticement of a Minor, occurring after November 1, 2015, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Sexually explicit communication with, and receipt of sexually explicit images/videos from, minors

(b) Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with STUDEBAKER (SUBJECT) about matters relating to the production and/or receipt and/or

AFFIDAVIT

possession of child pornography or the enticement of minors, including records that help reveal their whereabouts.

AFFIDAVIT

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by _____, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of _____. The attached records consist of _____. I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of _____, and they were made by _____ as a regular practice; and

    b.    such records were generated by _____ electronic process or system that produces an accurate result, to wit:

        1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of _____ in a manner to ensure that they are true duplicates of the original records; and

        2.    the process or system is regularly verified by _____, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date                                             Signature

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| In the Matter of the Search of ) | |
| ) | |
| INFORMATION ASSOCIATED WITH FACEBOOK ) | Case No. 2:18-SW-521 KJN |
| ACCOUNT: WWW.FACEBOOK.COM/Bryce.studebaker.37 ) | |
| THAT IS STORED AT PREMISES CONTROLLED BY ) | |
| FACEBOOK INC. ) | |

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the ___Eastern___ District of ___California___
*(identify the person or describe the property to be searched and give its location):*

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized):*

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before ___July 2, 2018___ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* .
☐ for ___ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: ___June 19, 2018 1:40 p.m.___   ___/s/___
                                                          *Judge's signature*

City and state: ___Sacramento, California___   ___Kendall J. Newman, U.S. Magistrate Judge___
                                                *Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return |||
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

### Certification

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____    _____
Signature of Judge                                    Date